**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

ANA CLAUDIA CAMARGO LIMAS and ELINTON BORGES BENARDO, individually and for all others similarly situated,

Plaintiffs,

v.

LASERSHIP, INC. d/b/a OnTrac Final Mile,

Defendant.

Civil Action No. 1:25-cv-11046

Filed by leave of Court,
leave granted June 24, 2026.

**FIRST AMENDED CLASS ACTION COMPLAINT**

## I. Introduction.

1. Plaintiffs Ana Claudia Camargo Limas ("Limas") and Elinton Borges Benardo ("Benardo") (together, "Plaintiffs") are former delivery drivers who provided delivery services for Defendant LaserShip, Inc. d/b/a OnTrac Final Mile ("OnTrac"). Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action against OnTrac, individually and on behalf of the following proposed class:

> all individuals who have performed last-mile delivery services for OnTrac in Massachusetts through one or more Regional Service Providers and who have been classified as independent contractors, rather than as employees, at any time since December 17, 2021.

2. Individually and for all others similarly situated, and pursuant to M.G.L. c. 149, §§ 150 and M.G.L. c. 151, §§ 1B and 20, Plaintiffs seek restitution for all monetary damages in

the form of lost or unpaid wages and benefits, treble damages, interest, attorneys' fees and costs, and all other relief to which they and the proposed class members are entitled.

## II. The Parties.

3. Ana Claudia Camargo Limas is an adult resident of Bridgewater, Massachusetts.

4. Elinton Borges Benardo is an adult resident of Marlborough, Massachusetts.

5. LaserShip, Inc., d/b/a OnTrac Final Mile, is a foreign corporation organized under Delaware law that maintains an office at 401 West Cummings Park, Suite 1150, in Woburn, Massachusetts 01801.

## III. Jurisdiction & Venue.

6. OnTrac removed this action to the United States District Court for the District of Massachusetts on April 21, 2025, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), asserting that this is a putative class action in which the putative class includes at least 100 members, the amount in controversy is alleged to exceed $5,000,000 exclusive of interest and costs, and that Limas is a citizen of a different state than OnTrac.

7. Venue in the Eastern Division (Boston) of the District of Massachusetts is proper pursuant to 28 U.S.C. § 1391(b) because OnTrac maintains an office in the Eastern Division (Woburn) and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the Eastern Division.

## IV. Statement of Facts.

8. OnTrac is a logistics company.

9. OnTrac provides, among other things, "last-mile" e-commerce package delivery services.

10. In 2021, OnTrac – then an independent company – was acquired by its competitor, LaserShip, for approximately $1.3 billion.

11. In 2023, LaserShip announced that it had "rebranded" itself under the trade name "OnTrac Final Mile":

> VIENNA, Va. — March 31, 2023 — Leading e-commerce parcel carriers LaserShip, Inc. dba OnTrac Final Mile ("LaserShip") and OnTrac Logistics, Inc. ("OnTrac Logistics") announced today that the companies will be jointly marketed under the name "OnTrac" and launched a new brand identity. The companies' extensive rebranding initiative, which includes a new name, logo, website, and visual identity, comes as a result of the 2021 transaction that placed LaserShip and OnTrac Logistics under shared ownership to form the first coast-to-coast partner of choice for last-mile e-commerce deliveries. Together, the companies' complementary East and West Coast delivery footprints empower retailers to reach consumers in the country's most populated regions with faster, more reliable home delivery at a lower cost.

12. OnTrac is one of several "portfolio companies" owned by the private equity investment firm American Securities, which acquired OnTrac in 2021.

13. American Securities describes OnTrac on its website as follows:

> **OnTrac**
>
> OnTrac is a leading last-mile delivery solutions provider, serving eCommerce retailers. The company provides same-day and next-day residential delivery services for small parcels (<50 lbs) through its fast growing network of 110+ facilities across 31 states.

14. OnTrac describes itself as a "proven alternative to national carriers."

15. OnTrac advertises its "mission" as "fast & reliable delivery for every package, every day."

16. OnTrac maintains "sort centers" and "distribution centers" in multiple states, including Massachusetts.

17. These "sort centers" and "distribution centers" are facilities that OnTrac maintains and uses to organize and "load" packages for delivery to customers.

18. OnTrac maintains distribution centers in Woburn and Franklin, Massachusetts.

19. OnTrac maintains a website at the following URL: https://www.ontrac.com.

20. OnTrac maintains a "FAQ" page on its website that includes the following statements:

What type of carrier is OnTrac?

OnTrac is an industry-leading last-mile carrier parcel carrier for retailers and direct-to-consumer brands.. Our delivery network spans 35 states and Washington, D.C. and reaches 70% of the U.S. population.

What does "last-mile delivery" mean?

There are many steps involved in the delivery process. The last mile of delivery (or the final mile) refers to the very last step in the delivery process, when a package leaves its final servicing facility and is delivered to its final destination (typically a residential or business address) by a carrier such as OnTrac.

What is OnTrac?

OnTrac is a leading provider of same-day and next-day delivery services. OnTrac partners with more than 7,000 independent contractors to make residential and business deliveries for some of the world's largest retailers using an integrated hub-and-spoke delivery network.

Where does OnTrac deliver?

We provide residential deliveries in 35 states and Washington, D.C. Our network map can be found here.

21. In addition, OnTrac makes the following representations about itself and the services it offers on its website:

a. "Connecting Retailers to Their Customers with Coast-To-Coast E-Commerce Delivery";

b. "38 years of parcel delivery experience";

c. "OnTrac has launched a weekend delivery service to help retailers reach consumers every day of the week with faster, residential e-commerce delivery that meets customer demands for Saturday and Sunday delivery";

d. "Faster, Reliable Residential E-Commerce Parcel Delivery";

e. "OnTrac is the first transcontinental carrier of choice for last-mile e-commerce deliveries that helps shippers build a competitive advantage through faster

delivery times, lower costs, coast-to-coast coverage, and reliable on-time performance;" and

f. "OnTrac has continuously adapted to the ever-changing delivery and e-commerce landscape to ensure we always provide shorter transit times, more flexibility, and lower costs than our competitors. Thanks to this proactive approach, we've grown to be the first transcontinental carrier of choice for last-mile e-commerce deliveries."

22. OnTrac posts shipping rates on its website.

23. Using OnTrac's website, customers can arrange for shipping and delivery of packages and can track the status of their packages while in transit.

24. OnTrac assesses surcharges for certain packages and services, such as, *inter alia*: fuel surcharges, additional handling, address correction, residential delivery, delivery to certain ZIP Codes, packages that exceed certain weight limits, residential signature, large package/oversize, unauthorized packages, and pickup services.

25. OnTrac assesses "demand" surcharges for packages shipped on certain dates.

26. OnTrac utilizes the services of over 7,000 delivery drivers across the United States to operate its business.

27. OnTrac has devised a scheme that enables it to enjoy the benefits of employing delivery drivers without needing to comply with wage and employment protection laws.

28. OnTrac retains ultimate control and authority over its delivery drivers but outsources the mid-level management of those drivers to local delivery companies called "Regional Service Providers" ("RSPs") that operate in the markets that OnTrac serves.

29. The relationship between OnTrac and these RSPs is not a legitimate business-to-business relationship.

30. Rather, OnTrac enters into those relationships in an effort to exempt itself from the protections afforded to workers by the Massachusetts wage-and-hour laws, including the Wage Act, M.G.L. c. 149, § 148, minimum wage statute, M.G.L. c. 151, § 1, and overtime statute, M.G.L. c. 151, § 1A.

31. OnTrac has used a variety of means to create a "fissured"[1] business structure in furtherance of this scheme.

32. For example, OnTrac recruits RSPs to manage its drivers through a page on its website entitled, "Provide Delivery Services."

33. The first thing that appears on the "Provide Delivery Services" page is the following statement:




34. By clicking the "Join a Meeting" link, local delivery companies and individuals considering starting a delivery company can request to participate in a recruitment meeting hosted by OnTrac employees.

---

[1] The term "fissured" describes the recent trend of companies "outsourcing" certain of the functions necessary to their business by "subcontracting" those functions to other organizations while maintaining a tight degree of control over the subcontractors' processes and standards in order to ensure that they meet the principal companies' desired outcome. *See* David Weil, "Understanding the Present and Future Work in the Fissured Workplace Context," *RSF: The Russell Sage Foundation Journal of the Social Sciences*, Vol. 5, No. 5 (Dec. 2019), pp. 147-165, *available at:* https://www.jstor.org/stable/10.7758/rsf.2019.5.5.08.

35. During those meetings, an OnTrac employee invites participants to "contract" with OnTrac through their delivery company or by setting up their own "independent transportation businesses."

36. In addition to the "Join a Meeting" option, OnTrac's "Provide Delivery Services" page also contains the following statement and link:

> Be your own boss and provide delivery services using your own vehicle(s).
>
> Apply to be a Delivery Driver

37. Individuals who click on the link are directed to a page with the following content:

> logistics.ontrac.com
>
> OnTrac
>
> **Deliver OnTrac Packages**
>
> OnTrac is a logistics broker. We hire last-mile delivery and linehaul transportation companies that provide contracted services.
>
> **If you want to be a driver with a route, we will send your submitted information to all the delivery companies in your desired area. The local delivery companies will contact you directly.**
>
> By completing this form, you agree to release the information you submit to these companies and agents or services acting on their behalf.

38. When an individual applies to be a delivery driver through this page on OnTrac's website, OnTrac sends that person's information to certain of its RSPs.

39. OnTrac uses its RSPs to manage the day-to-day work activities of its delivery drivers like Limas and Benardo.

40. OnTrac requires its RSPs to bear responsibility for paying individuals who deliver packages for OnTrac.

41. Limas personally performed delivery services for OnTrac through an RSP called United Transportation System, LLC, as a delivery driver from 2020 through May 2024.

42. Benardo personally performed delivery services for OnTrac through an RSP called MVN Shipping LLC as a delivery driver from December 2022 through July 2024.

43. As delivery drivers, Plaintiffs provided last-mile delivery services directly to OnTrac by delivering packages on OnTrac's behalf for OnTrac's customers.

44. The services that delivery drivers perform for OnTrac are within the company's usual course of business and integral to OnTrac's operations.

45. Without delivery drivers, OnTrac would be incapable of providing the "last-mile" delivery services it advertises to customers.

46. If delivery drivers stopped delivering packages for OnTrac, OnTrac would suffer a significant loss in revenue.

47. OnTrac controls and directs the delivery drivers in the performance of their delivery services.

48. OnTrac has required delivery drivers to wear OnTrac- or LaserShip-branded uniforms or branded apparel (e.g., vests) while performing services for the company.

49. OnTrac has required delivery drivers to use OnTrac- or LaserShip-branded identification while performing services for the company such as by, *inter alia*, placing decals on their vehicles bearing the LaserShip logo ("LS"):



50. OnTrac requires its delivery drivers to use its proprietary delivery platform, called "elli," to manage their routes and deliveries.

51. OnTrac delivery drivers are assigned to an OnTrac shipping facility in the area where their routes are located.

52. OnTrac delivery drivers report to an OnTrac shipping facility each day that they deliver packages for OnTrac's customers.

53. For example, Plaintiffs reported to an OnTrac shipping facility in Franklin, Massachusetts, each day that they worked.

54. After arriving at their respective OnTrac facility, delivery drivers organize, sort, process, and/or collect the packages for their routes.

55. OnTrac shipping facilities are staffed by OnTrac managers.

56. Managers of RSPs report to and are supervised by local OnTrac facility employees and managers.

57. OnTrac facility managers communicate instructions concerning routes and other matters to the delivery drivers through elli as well as through the RSPs' managers.

58. OnTrac maintains records and information concerning the services that its delivery drivers perform, including, *inter alia*, the routes they are assigned to fulfill, the days

they work, the number of packages they deliver, and any issues that arise with their routes or deliveries.

59. OnTrac requires delivery drivers to use their own vehicles to make deliveries.

60. Plaintiffs used their own non-commercial vehicles to provide delivery services for OnTrac through their RSPs. Their work, in whole or in part, was that of drivers of motor vehicles weighing less than 10,000 pounds.

61. OnTrac does not reimburse delivery drivers for any costs they incur to make deliveries for the company, such as, without limitation, incorporation fees, insurance, fuel, vehicle repairs, vehicle maintenance, vehicle depreciation, or mileage.

62. OnTrac takes certain deductions from the compensation it pays to RSPs for the services they perform, including fees for insurance and rental or use of certain equipment like scanners.

63. The RSPs have, in turn, “passed” these deductions onto the delivery drivers by withholding sums from the drivers’ compensation.

64. Limas, for example, had $39.00 deducted from her compensation on a recurring basis for insurance that OnTrac requires delivery drivers performing services through an RSP to possess.

65. Plaintiffs typically worked for OnTrac six or seven days per week. They would arrive at OnTrac’s shipping facility each day they worked between 7:00 a.m. and 8:00 a.m.

66. After leaving their shipping facility, Plaintiffs regularly worked 10 to 13 hours each day making deliveries for OnTrac.

67. Plaintiffs each typically delivered hundreds of packages per day and consistently worked upward of 50 hours per week.

68. During certain "busy seasons," Plaintiffs and OnTrac's other delivery drivers routinely worked past 9:00 p.m. making deliveries for OnTrac and often worked upward of 80 hours per week.

69. Plaintiffs and OnTrac's other delivery drivers have received an hourly rate lower than the applicable Massachusetts minimum wage during one or more weeks that they performed delivery services for OnTrac.

70. Limas was paid between $500 and $700 for several weeks during which she provided delivery services for OnTrac in 2022. Based on the hours she typically worked, the effective regular rate she received during those weeks was less than $14.25 per hour, which was the applicable Massachusetts minimum wage in 2022.

71. Benardo was paid about $1,000 for several weeks that he provided delivery services for OnTrac in 2022, 2023, and 2024. Based on the hours he typically worked, the effective regular rate he received during those weeks was less than the applicable Massachusetts minimum wage ($14.25 for 2022 and $15.00 for 2023 and 2024).

72. Despite regularly working more than 40 hours during one or more weeks while making deliveries for OnTrac, OnTrac never paid Plaintiffs – and has not paid its delivery drivers generally – separate and additional compensation for their overtime hours that is equal to or greater than one and one-half times their regular hourly rates.

73. OnTrac had actual or constructive knowledge of the hours worked by Plaintiffs and its delivery drivers generally based on the contemporaneous route and delivery data it maintained, which reflected the times when packages were delivered.

## V. Administrative Filing.

74. Pursuant to M.G.L. c. 149, § 150, Plaintiffs have filed their statutory claims against OnTrac with the Massachusetts Office of the Attorney General's Fair Labor Division. Plaintiffs have received "private right-to-sue" letters from the Attorney General authorizing them to pursue their claims individually and for all others similarly situated.

## VI. Class Allegations.

75. Plaintiffs bring their claims against OnTrac individually and for all others similarly situated, as defined herein, pursuant to Federal Rule of Civil Procedure 23.

76. The putative class that Plaintiffs seek to represent satisfies all the requirements of Federal Rule of Civil Procedure 23.

77. Joinder is impracticable because the number of individuals in the proposed class exceeds 40. Further, joinder would be impracticable due to the composition of the class, the nature of the claims and relief sought, and the remedial purpose of the underlying claims.

78. There are issues of law and fact common to all class members because OnTrac's practices similarly affected Plaintiffs and all other last-mile delivery drivers. The common questions of law and fact predominate over any questions affecting only individual class members. These predominant questions of law or fact are clear, well-defined, and equally applicable to Plaintiffs as well as every absent member of the proposed class.

79. Plaintiffs are typical of the proposed class because all OnTrac last-mile delivery drivers in Massachusetts were subject to the same unlawful practices and suffered similar harms.

80. Plaintiffs will fairly and adequately represent the proposed class because they provided services for OnTrac as last-mile delivery drivers and because their interests do not

conflict with the class members. The undersigned counsel will fairly and adequately represent the class members' interests because they have substantial experience in this field.

81. A class action is superior for several reasons including, *inter alia*: the case challenges OnTrac's employment classification and wage practices; many delivery drivers may be reluctant to bring claims individually for fear of retaliation; some class members may not have the ability or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each employee affected by the practices challenged herein to bring his or her own individual claim.

**COUNT I - MISCLASSIFICATION**
M.G.L. c. 149, §§ 148B, 150

82. As described above, OnTrac has misclassified Plaintiffs and the proposed class members as independent contractors even though OnTrac cannot meet the legal standard for such classification under the Massachusetts independent contractor statute, M.G.L. c. 149, § 148B, and common law.

83. As a result of their misclassification as independent contractors, Plaintiffs and the proposed class members have suffered economic damages in the form of unpaid wages, unpaid benefits, and unreimbursed business expenses.

84. Plaintiffs bring this claim individually and for all others similarly situated, as defined herein, pursuant to M.G.L. c. 149, § 150.

**COUNT II - UNPAID WAGES**
M.G.L. c. 149, §§ 148 and 150

85. As described above, OnTrac has misclassified Plaintiffs and the proposed class members as independent contractors even though OnTrac cannot meet the legal standard for

such classification under the Massachusetts independent contractor statute, M.G.L. c. 149, § 148B, or at common law.

86. As a result of their misclassification, Plaintiffs and the proposed class members have not received all the wages and benefits to which they are entitled, have been required to bear expenses relating to their employment that OnTrac should have paid, and have been denied other benefits of employment to which they are entitled, including reimbursement for mileage, paid sick time, and paid vacation time.

87. This conduct is in violation of the Massachusetts Wage Act, M.G.L. c. 149, §§ 148 and 150, and the common law.

88. Plaintiffs bring this claim individually and for all others similarly situated, as defined herein, pursuant to M.G.L. c. 149, § 150.

**COUNT III – UNPAID MINIMUM WAGES**

M.G.L. c. 151, § 1

89. As described above, OnTrac has failed to pay Plaintiffs and the proposed class members compensation equal to or greater than the minimum wage for all hours worked in violation of the Massachusetts minimum wage statute, M.G.L. c. 151, § 1.

90. The Massachusetts minimum wage statute, M.G.L. c. 151, § 1, requires employers to pay employees at least the basic minimum wage, as defined by 454 CMR 27.00, for all hours worked. During the time period relevant to this case, that basic minimum wage in Massachusetts was $13.50 per hour (2021), $14.25 per hour (2022), and $15.00 (since 2023).

91. Plaintiffs' and the proposed class members total compensation received for the work they performed for OnTrac, divided by their weekly compensable hours worked, has not always equaled or exceeded the statutory basic minimum wage rates set forth *supra*.

92. This conduct is in violation of the Massachusetts Minimum Fair Wage Law, M.G.L. c. 151, §§ 1 and 20.

93. Plaintiffs bring this claim individually and for all others similarly situated, as defined herein, pursuant to M.G.L. c. 151, § 20.

**COUNT IV – UNPAID OVERTIME**
M.G.L. c. 151, § 1A

94. As described above, OnTrac has failed to pay Plaintiffs and the proposed class members separate and additional premium compensation equal to at least 1.5 times their regular hourly rate for all hours worked in excess of 40 per workweek in violation of the Massachusetts overtime statute, M.G.L. c. 151, § 1A.

95. The Massachusetts overtime statute M.G.L. c. 151, § 1A, requires employers to pay their employees 1.5 times their regular hourly rate, as defined by 454 CMR 27.00, for all compensable hours worked in excess of 40 per workweek.

96. Plaintiffs and the proposed class members have regularly worked well in excess of 40 hours per workweek during the statutory period applicable to this case. However, OnTrac has never provided Plaintiffs or the proposed class members with separate and additional compensation beyond their base rate of pay (e.g., per package) for those overtime hours.

97. This conduct is in violation of the Massachusetts Minimum Fair Wage Law, M.G.L. c. 151, §§ 1A and 1B.

98. Plaintiffs bring this claim individually and for all others similarly situated, as defined herein, pursuant to M.G.L. c. 151, § 1B.

## VII. Jury Demand.

Plaintiffs request a trial by jury on all claims.

WHEREFORE, Plaintiffs seek judgment against OnTrac as follows:

A. Certification of the proposed class, or recognition that this case is properly brought on behalf of all similarly situated employees, pursuant to Fed. R. Civ. P. 23.

B. Restitution for all damages to which Plaintiffs and the proposed class members are entitled;

C. Statutory treble damages pursuant to M.G.L. c. 149, § 150, and c. 151, §§ 1B and 20;

D. Pre- and post-judgment interest;

E. Attorneys' fees and costs; and

F. All other relief as the Court may deem proper and just.

Respectfully submitted,
ANA CLAUDIA CAMARGO LIMAS and
ELINTON BORGES BENARDO, individually and
for all others similarly situated,

By their attorneys,

/s/ Brant Casavant

Brook Lane, BBO #678742
Brant Casavant, BBO #672614
FAIR WORK P.C.
192 South Street, Suite 450
Boston, MA 02111
T. (617) 607 - 3261
F. (617) 488 - 2261
brook@fairworklaw.com
brant@fairworklaw.com

Dated: June 25, 2026.