**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ANA CLAUDIA CAMARGO LIMAS, and ELINTON BORGES BENARDO, individually and for all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LASERSHIP, INC. d/b/a OnTrac Final Mile,<br><br>Defendant. | Case No. 1:25-cv-11046-PBS |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO LIMIT THE SCOPE OF RULE 30(B)(6) DEPOSITION TOPIC NO. 4**

# TABLE OF CONTENTS


TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. Case background ........ 2

B. Dispute over Topic No. 4 in Rule 30(b)(6) deposition notice ........ 3

III. LEGAL STANDARD ........ 4

IV. ARGUMENT ........ 5

A. Topic 4 exceeds Rule 30(b)(6)'s fact-discovery scope because it seeks legal conclusions, not facts. ........ 5

B. The interpretations Plaintiffs seek could come only from counsel and are protected work product. ........ 7

V. CONCLUSION ........ 9

## TABLE OF AUTHORITIES

### Cases

*3M Co. v. Kanbar*,
No. C06-01225 JW HRL, 2007 WL 1794936 (N.D. Cal. June 19, 2007)....5

*Abosch v. Scholastic Ent., Inc.*,
No. 24-CV-8041, 2026 WL 1622772 (S.D.N.Y. June 4, 2026)....6

*Anderson v. Cryovac, Inc.*,
805 F.2d 1 (1st Cir. 1986)....5

*Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*,
201 F.R.D. 33 (D. Mass. 2001)....6

*Cook v. Lynn & William, Inc.*,
344 F.R.D. 149 (D. Mass. 2023).... 5, 7

*Cooper v. Charter Commc'ns, Inc.*,
No. 3:12-cv-10530-MGM, 2016 WL 128099 (D. Mass. Jan. 12, 2016).... 6, 7, 8

*Fid. Mgmt. & Rsch. Co. v. Actuate Corp.*,
275 F.R.D. 63 (D. Mass. 2011)....8

*JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*,
209 F.R.D. 361 (S.D.N.Y. 2002)....5

*Neponset Landing Corp. v. Nw. Mut. Life Ins. Co.*,
279 F.R.D. 59 (D. Mass. 2011).... 5, 7

*Prime Choice Servs., Inc. v. Schneider Logistics Transloading & Distrib., Inc.*,
861 F.3d 633 (7th Cir. 2017)....2

*Town of Lexington v. Pharmacia Corp.*,
No. 12-CV-11645-PBS, 2015 WL 1321457 (D. Mass. Mar. 24, 2015)....7

*Trs. of Bos. Univ. v. Everlight Elecs. Co.*,
No. 12-CV-11935-PBS, 2014 WL 5786492 (D. Mass. Sept. 24, 2014).... 8

*United States v. Taylor*,
166 F.R.D. 356 (M.D.N.C. 1996).... 6, 7

### Rules

Fed. R. Civ. P. 26(b)(3)(B).... 8

Fed. R. Civ. P. 26(c).... 8, 9

Fed. R. Civ. P. 26(c)(1).... 4

Fed. R. Civ. P. 26(c)(1)(D) ........................................................................................................4

Fed. R. Civ. P. 30(b)(6)........................................................................................................ *passim*

**Other Authorities**

Business Transactions Solutions § 263:2 (Westlaw, database updated July 2026) ........................ 2

## I. INTRODUCTION

Plaintiffs' Amended Rule 30(b)(6) notice includes Topic 4, which covers "LaserShip's contracts and agreements with delivery service providers, including without limitation, all contracts and agreements with Defendant United Transportation System LLC ('UTS')."[1] LaserShip will produce a designee to testify fully about the facts of those agreements — how they were negotiated and executed, how LaserShip administers them, and how the parties have performed under them. The issue presented is whether LaserShip must also, as Plaintiffs contend, have its designee prepared to testify to what particular terms "mean" and "address," and what they require as a matter of law.

Plaintiffs pursued precisely that testimony at a prior deposition, pressing LaserShip's witness provision by provision until he explained that he was not a lawyer and could not answer without consulting LaserShip's legal department. When LaserShip proposed to confine Topic 4 to the factual categories set out below, Plaintiffs refused, and advised that they will seek to depose LaserShip's Chief Legal Officer if the Topic 4 designee does not supply the interpretations they want.

Rule 30(b)(6) permits none of this. The Rule exists to discover facts. What a contract means is a question of law for the Court, not a fact within a corporation's knowledge, and an interpretation extracted from a lay designee would invade work product while binding no one. Absent an order, LaserShip faces exactly the burden Rule 26(c) exists to prevent: preparing a lay witness to render legal conclusions he is not competent to give, and then litigating this same question a second time on a motion to quash. That is good cause. LaserShip accordingly moves under Rule 26(c) for an order providing that its designee need not interpret, construe, or opine on

[1] Documents and depositions cited are attached as exhibits to the contemporaneously filed Declaration of Andrew J. Butcher. Citations to deposition transcripts are shown as "[last name] Dep. [page:line]."

the meaning or legal effect of the terms in its agreements. LaserShip does not seek to preclude Topic 4; it seeks only to confine the deposition to its permissible, factual scope.

## II. BACKGROUND[2]

### A. Case background

Companies that make and sell products rarely deliver them. They outsource that function to third-party logistics providers—firms that manage "the flow and storage of goods, in order to meet a customer's requirements." *Prime Choice Servs., Inc. v. Schneider Logistics Transloading & Distrib., Inc.*, 861 F.3d 633, 634 (7th Cir. 2017).[3]

LaserShip provides these logistics services to customers across industries such as e-commerce, healthcare, pharmaceuticals, office products, and financial services. To carry out the final leg of those deliveries in a given market, LaserShip contracts with independent transportation companies — Regional Service Providers, or "RSPs" — that supply and manage their own drivers. Those RSP agreements are the contracts at issue in Topic 4.

UTS is one of those companies. UTS has delivered packages for LaserShip since 2017 and, since 2022, has engaged roughly 300 drivers, with a current roster of approximately 48. Alamrat Dep. 28:16-18; 35:10-23.[4] Plaintiff Ana Claudia Camargo Limas was one of them. UTS—not LaserShip—engaged Limas as a driver, assigned her routes, set her work schedule, decided her rate of pay, and paid her. Alamrat Dep. 34:9-11; 36:21-38:21; 68:16-69:4; 167:3-11.

---

[2] The Parties raised this dispute in late May and early June but agreed to defer motion practice until Plaintiffs filed their amended pleading and a briefing schedule on class certification and dispositive motions was set. Both have now occurred. Dkt No. 38 (June 25 First Amended Class Action Complaint filing), Dkt No. 40 (July 17 Order Granting Joint Motion to Set Briefing Schedule).

[3] *See* Alan S. Gutterman, Business Transactions Solutions § 263:2 (Westlaw, database updated July 2026) (defining logistics management and noting that companies commonly outsource all or a portion of their logistics activities).

[4] Alamrat, the Rule 30(b)(6) designee of since-dismissed co-defendant United Transportation System, LLC, refers throughout his deposition to "OnTrac," which he testified is the same entity as LaserShip. Alamrat Dep. 26:15-23.

Limas filed this putative class action in Massachusetts Superior Court in December 2024, originally naming UTS and its two principals as defendants alongside LaserShip. Dkt No. 1. On June 25, 2026, Plaintiffs filed a First Amended Complaint adding Elinton Borges Benardo as a named plaintiff. Benardo never drove for UTS; he drove for a different RSP, MVN Shipping LLC, from December 2022 through July 2024. *See* First Am. Compl. ¶ 42. The amended pleading dropped UTS and its principals from the case entirely, leaving only the allegation that LaserShip—not the RSPs that engaged, supervised, and paid the drivers—was Plaintiffs' true employer, allegations that LaserShip denies. Dkt Nos. 36, 38.

**B. Dispute over Topic No. 4 in Rule 30(b)(6) deposition notice**

Topic 4 in the Amended Notice seeks to cover "LaserShip's contracts and agreements with delivery service providers, including without limitation, all contracts and agreements with Defendant United Transportation System." Plaintiffs' counsel has already pursued that line of questioning. At the deposition of LaserShip's Director of Last Mile Operations Compliance, Alex Velazquez, counsel pressed the witness provision by provision for interpretations of particular contract terms. Velazquez Dep. 83:1-17; 84:6-11; 85:6-11; 97:15-16; 110:14-19; 138:6-13; 140:20; 142:6; 143:14-144:4; 144:13-24.

The pattern did not vary. Plaintiffs' counsel directed the witness to a provision, had him read it aloud, and then asked what it meant. Asked whether a driver like Limas was a "subcontractor" as that term is used in the Regional Service Agreement, the LaserShip witness answered that the question called for "a legal representation I can't make," explaining that he could read the provision "in its plain English form" but could not say "legally who it binds," which "would be for legal to answer." Velazquez Dep. 83:18-22. Pressed again, he answered: "I don't know if they would be considered, I honestly don't. To me that's a legal question." *Id.* at 85:14-16.

Plaintiffs' counsel followed a consistent two-step method: elicit a plain-language description of a provision, then convert that description into a legal proposition through a "fair to say" follow-up. *E.g.*, Velazquez Dep. 78:13-23. Plaintiffs' counsel asked what a paragraph "address[ed]," obtained a plain-language answer, and immediately asked whether it was "fair to say" the provision obligated RSPs to comply with Massachusetts wage and hour laws. *Id.* at 138:6-18. The witness's answer identified the only possible source of the interpretation Plaintiffs wanted: he would "have to ask our legal department who drafted — completed this contract," because while he could "read the agreement all you want," supplying an interpretation would require him to "go to" LaserShip's legal department. *Id.* at 145:5-13.

Recognizing after the Velazquez deposition that Plaintiffs intended to use Topic No. 4 in the Rule 30(b)(6) Notice as a vehicle to obtain the corporate designee's interpretation of contract terms, LaserShip began a meet and confer process with Plaintiffs that set forth the contours of what the designee would be prepared to testify about with respect to Topic No. 4: (1) the existence and general purpose of the contracts signed by service providers like UTS; (2) LaserShip's personnel involved in the negotiation and execution of the agreements; (3) LaserShip's ordinary business practices in administering the agreements; (4) how LaserShip in practice treated service providers and their drivers; and (5) the parties' course of dealing and course of performance. Ex. C at 9-10. Plaintiffs refused to accept those limits. *Id.* at 7.

## III. LEGAL STANDARD

On motion and for good cause, the Court may issue an order protecting a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). The Court may forbid "inquiry into certain matters, or limi[t] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). A finding of good cause must rest on a

particular factual demonstration of potential harm, not on conclusory statements. *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986).

## IV. ARGUMENT

Federal Rule 30(b)(6) requires a corporate designee to testify about matters "known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). That obligation runs to facts. Questions calling for legal conclusions are not proper subjects of a 30(b)(6) deposition. Because Plaintiffs seek legal conclusions and the attorney work product that would necessarily supply them, the Court should enter a protective order.

### A. Topic 4 exceeds Rule 30(b)(6)'s fact-discovery scope because it seeks legal conclusions, not facts.

The District Court of Massachusetts has recognized that "[d]epositions, including 30(b)(6) depositions, are designed to discover facts, not … legal theories." *Neponset Landing Corp. v. Nw. Mut. Life Ins. Co.*, 279 F.R.D. 59, 61 (D. Mass. 2011) (quoting *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002)). Topics "seeking legal conclusions … should not form the basis for 30(b)(6) deposition topics." *3M Co. v. Kanbar*, No. C06-01225 JW HRL, 2007 WL 1794936 at *2 (N.D. Cal. June 19, 2007).

A corporate designee is the wrong witness for the questions Plaintiffs intend to ask. *See Cook v. Lynn & William, Inc.*, 344 F.R.D. 149, 157 (D. Mass. 2023) ("A Rule 30(b)(6) designee who … is typically not a lawyer, is not well-suited to answer questions about the legal consequences of certain facts"). Plaintiffs have already put those questions to a LaserShip witness once, and they have told LaserShip they will put them to its designee again. In meeting and conferring on Topic 4, Plaintiffs' counsel confirmed that they expect substantive answers to the same interpretive questions and that, if the designee does not supply them, they will seek to depose LaserShip's Chief Legal Officer on the same subject matter. Ex. C at 7. The prior

questioning thus establishes what Topic 4 will produce absent an order: LaserShip must either prepare a lay witness to render legal conclusions or litigate this question a second time on a motion to quash. *See Cooper v. Charter Commc'ns, Inc.*, No. 3:12-cv-10530-MGM, 2016 WL 128099, at *2 (D. Mass. Jan. 12, 2016) (granting protective order on topic seeking information about interpretations of service agreements as it pertains to evidence supporting affirmative defenses); *Abosch v. Scholastic Ent., Inc.,* No. 24-CV-8041, 2026 WL 1622772, at *1 (S.D.N.Y. June 4, 2026) (denying motion to compel Rule 30(b)(6) deposition testimony on topic that "boils down to seeking [defendant's] legal conclusions about the contract negotiation and drafting").

Meet and confer efforts reveal that Plaintiffs' contrary position rests principally on *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33 (D. Mass. 2001), and its citation to *United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996), for the proposition that "the meaning of terms and provisions in contracts that [LaserShip] drafted are matters that are indisputably known or reasonably available to the company." Ex. C at 7. Neither case does the work Plaintiffs assign it, because both answer a different question than the one before the Court. Preparation cases ask how much a designee must learn before the deposition begins. They do not define what the designee may be asked once it does.

*Calzaturficio* is a preparation case. The designees there were held inadequately prepared because they refused to review documents reasonably available to them, leaving opposing counsel without even a basic factual understanding of the corporation's positions. 201 F.R.D. at 37-39. The remedy was a further deposition after adequate preparation—not an order compelling anyone to construe contract language as a matter of law.

*Taylor* is the same, and the language Plaintiffs quote from it is weaker still. The phrase—that a corporation must provide "its interpretation of documents" through its designee—is not a

holding. It appears in a passage cataloging the scope of the preparation duty, in a case about a corporation that sent unprepared witnesses. 166 F.R.D. at 361. Read in context, it requires a corporation to come prepared to say what it understood its own documents to do and how it used them. That is a factual account of the corporation's comprehension, and LaserShip has offered exactly that. It is not a rule that a lay witness must declare the legal effect of contract language the parties are actively litigating. Plaintiffs cite no decision reading *Taylor* that way, and such a reading would place it in direct conflict with the District of Massachusetts authority above. *See Cook*, 344 F.R.D. at 157; *Cooper*, 2016 WL 128099, at *2-3; *Neponset Landing*, 279 F.R.D. at 61.

What Plaintiffs seek is therefore not a fact within LaserShip's knowledge, but a legal construction reserved to the Court—one no corporate designee is competent to supply. *See Town of Lexington v. Pharmacia Corp.*, No. 12-CV-11645-PBS, 2015 WL 1321457, at *6 (D. Mass. Mar. 24, 2015) (a Rule 30(b)(6) designee's "own interpretation of a contract [is] a legal conclusion not binding on [the] designating defendant" that "invades the province of the court to determine the applicable law" (citations omitted)). LaserShip's offer to testify to the parties' course of dealing and course of performance is consistent with that line: how LaserShip administered the agreements is conduct the designee knows; what they mean as a matter of law is not his to say. A protective order is warranted to preserve the scope of the deposition and to spare LaserShip the burden of preparing a designee to testify to matters the Court, not the witness, will decide.

**B. The interpretations Plaintiffs seek could come only from counsel and are protected work product.**

A lay witness may testify to many things about an agreement, but testimony directed at "asserted interpretations of the service agreements" between a company and its counterparties

would "almost certainly – and quickly – stray into the forbidden territory of a lawyer's mental impressions." *Cooper,* 2016 WL 128099, at *2-3.

That is precisely the risk here. A designee has no independent knowledge of what LaserShip's agreements mean as a matter of law; the only way he could answer is by relaying what LaserShip's attorneys told him in preparing him to testify. *See Trs. of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-CV-11935-PBS, 2014 WL 5786492, at *3 (D. Mass. Sept. 24, 2014) (a Rule 30(b)(6) "deponent must [if necessary] use documents, past employees, and other resources in performing required preparation"); *Fid. Mgmt. & Rsch. Co. v. Actuate Corp.,* 275 F.R.D. 63, 64 (D. Mass. 2011) ("it is most likely that the lawyer was the source of the information which was provided to the 30(b)(6) witness so that he could answer the questions on behalf of the corporation"); Velazquez Dep. 145:19-24 (witness clarifying he would have to contact LaserShip's legal department for their view). Any answer the designee gave would therefore be derived from – and would reveal – counsel's mental impressions and legal conclusions.

Plaintiffs' threat to subpoena LaserShip's Chief Legal Officer confirms the point. A party seeking facts about a contract does not demand them from the other side's lawyer. Plaintiffs want a legal interpretation and are indifferent to which witness supplies it, which is why these questions stray into territory this Court has placed off limits. *See Cooper*, 2016 WL 128099 at *2 (ruling that questions based on interpretations of service agreements stray into work product).

The work product doctrine exists to protect those mental impressions from disclosure. Fed. R. Civ. P. 26(b)(3)(B). Ordering LaserShip's corporate designee to testify about the meaning of certain terms and provisions would impose the very undue burden Rule 26(c) exists to prevent.

## V. CONCLUSION

For these reasons, LaserShip respectfully requests that the Court enter a protective order under Rule 26(c) limiting Rule 30(b)(6) Topic No. 4 to factual matters, and providing that LaserShip's designee need not interpret, construe, or opine on the meaning or legal effect of any provision of LaserShip's service agreements.

LaserShip will produce a designee prepared to testify to the categories it identified during the parties' conference: the existence and general purpose of the agreements; the LaserShip personnel who negotiated and executed them; LaserShip's ordinary business practices in administering them; how LaserShip in practice treated service providers and their drivers; and the parties' course of dealing and course of performance. Topic 4 should proceed on that basis.

Dated: July 27, 2026

Respectfully submitted,

*/s/ Andrew J. Butcher*

Andrew J. Butcher
abutcher@scopelitis.com
(Admitted *Pro Hac Vice*)
Charles Andrewscavage
candrewscavage@scopelitis.com
(Admitted *Pro Hac Vice*)
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY, P.C.
30 West Monroe Street, Suite 1600
Chicago, IL 60603
Phone:(312) 255-7200
Janis E. Steck

(Admitted *Pro Hac Vice*)
jsteck@scopelitis.com
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
Phone: (317) 637-1777

Daniel R. Sonneborn, BBO #679229
PRETI FLAHERTY BELIVEAU &
PACHIOS, LLP
60 State Street, Suite 1100
Boston, MA 02109
Phone: 617-226-3852
dsonneborn@preti.com

*Attorneys for Defendant,*
LASERSHIP, INC. d/b/a OnTrac Final Mile

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed manually or through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 27, 2026.

*<u>/s/ Andrew J. Butcher</u>*
Andrew J. Butcher

4898-0796-7154