UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANA CLAUDIA CAMARGO LIMAS and ELINTON BORGES BENARDO, individually and for all others similarly situated, Plaintiffs, v. LASERSHIP, INC., d/b/a OnTrac Final Mile, Defendant. | Civil Action No. 25-11046-PBS |

ORDER ON DEFENDANT'S MOTION FOR A PROTECTIVE ORDER[1]
[Docket No. 41]

September 11, 2026

Boal, M.J.

Defendant LaserShip, Inc., d/b/a OnTrac Final Mile ("LaserShip"), moves pursuant to Rule 26(c) of the Federal Rules of Civil Procedure for a protective order precluding Plaintiffs from deposing its Rule 30(b)(6) witness about a particular topic. Docket No. 41.[2] For the following reasons, this Court grants the motion.

[1] Judge Saris referred the motion to the undersigned on August 12, 2026. Docket No. 46.

[2] Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.

I. RELEVANT BACKGROUND

Plaintiffs Ana Claudia Camargo Limas and Elinton Borges Benardo are former delivery drivers who allege they provided delivery services for defendant LaserShip. Docket Nos. 36 ¶ 1; 38 ¶ 1. In this putative class action suit, Plaintiffs allege that LaserShip was their employer, and it misclassified them as independent contractors, pursuant to M.G.L. c. 149, §§ 148B and 150; violated the Massachusetts Wage Act due to the misclassification; and failed to pay them minimum wages and overtime rates for their work, pursuant to M.G.L. c. 151, §§ 1 and 1A. Docket No. 36 ¶¶ 82-98. LaserShip, however, denies that it acted as Plaintiffs' employer and instead asserts that it contracted with independent transportation companies known as Regional Service Providers ("RSPs") that employed and managed Plaintiffs. Docket No. 42 at 6-7.

To carry out its delivery model, LaserShip utilizes two standard form contracts prepared by the company: the Regional Service Agreement ("RSA") and the Regional Fee Agreement ("RFA"). Docket No. 43 at 2. These agreements govern the relationship between LaserShip and its RSPs, containing provisions concerning, among other things, independent contractor status, termination rights, and the use of delivery personnel and subcontractors. Id. at 3. The contracts in this case were signed on behalf of LaserShip by Shawn Rush, Director of Contract Negotiations, and Alex Velazquez, Director of Last Mile Operations Compliance. Id. at 4.

On March 9, 2026, Plaintiffs identified specific topics for examination of LaserShip's 30(b)(6) witness and the parties engaged in a lengthy meet and confer process. Docket No. 42-1 at 8. Topic 4 remains in dispute. Docket No. 41. It seeks information regarding "LaserShip's contracts and agreements with delivery service providers, including, without limitation, all contracts and agreements with [RSP] United Transportation System LLC ("UTS")." Docket No. 42-1 at 6, 56-65. The parties disagree as to the scope of appropriate questioning pursuant to

Topic 4. Docket Nos. 42 at 9; 43 at 8-9. In the meantime, Plaintiffs took depositions of LaserShip employees. Docket Nos. 42 at 7-8. Both sides rely on testimony from those depositions as examples of the type of testimony Plaintiffs seek during the Rule 30(b)(6) deposition. See, e.g., Docket Nos. 42 at 7-8; 43 at 3-4.

On July 27, 2026, LaserShip moved for a protective order to limit the scope of Rule 30(b)(6) deposition Topic 4. Docket No. 41. It asks this Court to provide that LaserShip's "designee need not interpret, construe, or opine on the meaning or legal effect of the terms in its agreements." Docket No. 42 at 5-6. It does not seek to preclude further testimony altogether on Topic 4 but rather would produce a witness to testify about ordinary business practices in administering the contracts, how LaserShip treated the service providers and their drivers, and the parties' course of dealing and performance. Docket No. 42 at 13. Plaintiffs opposed the motion and LaserShip filed a reply. Docket Nos. 43, 48. This Court heard oral argument on September 9, 2026. Docket No. 49.

## II. ANALYSIS

### A. Standard Of Review

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Whether discovery is proportional to the needs of the case depends on, among other things, "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the expense of the proposed discovery outweighs its likely benefit." Id.

In general, "[a] party may, by oral questions, depose any person, including a party, without leave of court." Fed. R. Civ. P. 30(a). Rule 26(c) of the Federal Rules of Civil

Procedure limits this generally broad access to witnesses during the discovery process. Fed. R. Civ. P. 26(c) (providing for the issuance of a protective order to avoid "undue burden" on the deponent). Specifically, Rule 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." Fed. R. Civ. P. 26(c)(1). The party seeking a protective order has the burden of demonstrating good cause. Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *10 (D. Colo. Feb. 8, 2010). Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co v. Rhinehart, 467 U.S. 20, 36 (1984).

Rule 30(b)(6) of the Federal Rules of Civil Procedure "allows an organization to designate an individual to testify on its behalf." Tr. of Bos. Univ. v. Everlight Electronics Co., Nos. 12–cv–11935–PBS, 12–cv–12326–PBS, 12–cv–12330–PBS, 2014 WL 5786492, at *3 (D. Mass. Sept. 24, 2014) (internal quotation marks omitted). In turn, "[t]he designating party must make a good faith effort to prepare its designees so that they can answer questions fully, completely and unevasively." Id. This duty "goes beyond matters personally known to that designee or to matters in which the designee was personally involved." Briddell v. Saint Gobain Abrasives Inc., 233 F.R.D. 57, 60 (D. Mass. 2005) (internal quotation marks omitted).

B. Interpretation Of Contracts

LaserShip contends that questioning under Topic 4 could improperly invade the province of the Court by seeking legal conclusions regarding the meaning, construction, and legal effect of precise terms and paragraphs in the RSAs and RFAs. Docket No. 42 at 10-11. In particular, it

cites to Town of Lexington v. Pharmacia Corp., No. 12-CV-11645-PBS, 2015 WL 1321457, at *6 (D. Mass. Mar. 24, 2015). Docket No. 42 at 11. In that case, now Chief Judge Casper, in the context of a summary judgment decision, refused to consider Rule 30(b)(6) testimony regarding legal liability because it did not bind the party who designated the witness. Lexington, 2015 WL 1321457, at *6. Rather, she found that such testimony called for legal conclusions from a witness without a legal background and invaded the province of the court to determine the applicable law. Id. See Cooper v. Charter Commc'ns, Inc., No. 3:12-CV-10530-MGM, 2016 WL 128099, at *2 (D. Mass. Jan. 12, 2016) (Rule 30(b)(6) depositions are designed to discover facts not legal theories). In addition, questions about interpretation of legal terms could strictly stray "into the forbidden testimony of a lawyer's mental impressions." Id.

Topic 4 in and of itself is not an improper topic. However, as provided in the motion papers, the examples from the Rule 30(b)(1) depositions show that Plaintiffs seek improper testimony. For example, in Velazquez's 30(b)(1) deposition, Plaintiffs' counsel asked the following questions, to which Velazquez gave the following responses:

Q: Does the term subcontractor refer to individuals like Limas?

A: I'm sorry, let me see. You're talking about the first paragraph?

Q: Yes. In the last sentence it says, "As used in this agreement, the term contractor shall include."

A: I mean, it's just as plain as it reads. I don't know exactly what the legal definition of that would be, who that would be referring to.

Q: Setting aside the legal definition, if Limas was an independent contractor of UTS, given what we discussed about subcontractors related to RSPs, would she be considered to be a subcontractor as that term is used in this sentence?

A: Again, that's a legal representation I can't make. I can read it to you in its plain English form, but I can't tell you legally who it binds. That would be for legal to answer.

Q: I'm asking again from a business perspective.

A: From a business perspective . . . OnTrac, the broker, is coming into

> contract with United Transportation System, LLC. That's who signed the contract and that's my understanding of who's coming into this contract.

Docket No. 42-1 at 31 (83:1-84:5). These are improper questions (although couched otherwise) seeking a legal interpretation from the witness. However, Plaintiffs could ask proper questions along the lines outlined by LaserShip as to how LaserShip viewed Plaintiffs' status without tying it directly to the witnesses' interpretation of a word or phrase in the contract.

## III. ORDER

For the foregoing reasons, this Court grants LaserShip's motion for a protective order. Accordingly, LaserShip shall produce a Rule 30(b)(6) designee prepared to testify regarding Topic 4; however, such designee need not interpret, construe, or opine on the meaning or legal effect of any provision of LaserShip's service agreements. The designee must be prepared to testify about the existence and general purpose of the agreements; the LaserShip personnel who negotiated and executed them; LaserShip's ordinary business practices in administering them; how LaserShip in practice treated service providers and their drivers; and the parties' course of dealing and course of performance.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
U.S. MAGISTRATE JUDGE